In the Matter of the Claim of FRED PENN, Respondent, against BLACK RIVER VALLEY CLUB et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— This is an appeal by the employer and its insurance carrier from a decision and award of the Workmen's Compensation Board. The board has determined that as a result of puncturing his right leg with a nail protruding from a crate on his employer's premises, claimant, who had a pre-existing diabetes and arteriosclerosis, suffered an aggravation of his circulatory disease which necessitated prolonged bed rest, which in turn further stagnated the circulation of both his legs and resulted in occlusion and thrombosis of arteries in both legs, all of which resulted in a chronic ulcer on the right leg and an unstable right ankle; that as a result of these injuries he fell and injured the toes of his left leg requiring their amputation and ultimate loss of the lower left leg; and as a further consequence thereof it became necessary to amputate the lower right leg. The employer and carrier contend the evidence of a consequential accident resulting in injuries to the left leg is not substantial so that the award for the disability attributable to the loss of part of the left leg should be reversed. No contest is made over their liability for the loss of the right leg. On October 1, 1951, while in his employment, claimant sustained the puncture wound on the malleolus of his right leg. He was treated by Dr. Montgomery of Watertown who reported he found ulcers on both legs and had on October 22 performed a bilateral varicose vein ligation. Claimant was hospitalized for 9 or 10 days. The ulcers at the site of the puncture did not heal so claimant obtained treatment from Dr. Harris in Albany. He was confined to St. Peter's Hospital from December 10, 1951 to February 2, 1952, for treatment of the ulcer at the puncture site and of others resulting from the ligation incisions. When discharged, the surgical ulcers had healed and the other showed improvement. He was again hospitalized from March 20 to April 4, 1952, for treatment of the ulcer on the malleolus. Upon discharge, Dr. Harris noted the ulcer was almost completely healed but there was some stiffness of the ankle. He recommended the use of crutches. On May 1, claimant began work at a race track in Massachusetts. While there, he testified that on May 20 he jammed the toes of his left foot against the riser of a low step leading to a stairway, tripped and fell. Three days later he noticed two toes of his left foot were black. He continued to work for two weeks and then several days after returning home to Albany his wife called Dr. Harris, and on June 8 he was readmitted to St. Peter's Hospital. Dr. Harris testified the original ulcer on the malleolus of the right leg had broken down again and there was impending gangrene in the second and third toes of his left foot. Dr. Harris called in Dr. O'Keeffe, a surgeon, who recommended and performed on July 19 a bilateral symphathectomy which was designed to overcome arterial insufficiency in the legs. The operation healed the ulcer but did not stem the progress of the gangrene in the toes so that on August 4, Dr. O'Keeffe amputated them. The incisions of the amputations refused to heal, so on September 9, Dr. O'Keeffe performed an operation involving the removal of clots from the iliac artery and the aorta. Two days later, claimant began hemorrhaging in the gastro-intestinal tract, which was attributed to the opening up of an old duodenal ulcer, and went into complete shock. Activation of the ulcer was attributed to drugs which had been given to claimant to dilate his blood vessels. Dr. O'Keeffe testified the shock lowered the blood pressure and the flow of blood to his extremities causing further clotting; that anesthesia of both legs developed because the nerves were not getting enough blood. On September 27 the left leg, which had become gangrenous, was amputated at the knee. Although the right leg did not appear much better, it was treated with vasodilating drugs and became strong enough to bear weight. On October 31 claimant was dismissed on crutches. Claimant was again hospitalized from July 29, 1953 to September 1, 1953

for treatment of a recurrence of the ulcer of the malleolus. Dr. Harris continued to treat the condition but it grew worse. Ulcers developed on his right great toe. He went into the Albany hospital on February 17, 1954, for treatment, and by April 18 they appeared sufficiently healed to warrant his discharge. By June 15, 1954, the ulcers had reopened and he was readmitted with complaints of severe pain in his right leg. On June 22, the right leg was amputated below the knee. Dr. Harris testified in April, 1953, before the right leg was amputated. In his opinion the accident of October, 1951 precipitated the chain of events which required the amputation of the left leg. He denied that the whole condition of the left leg was attributable to the progress of the pre-existing diabetes and arteriosclerosis without reference to the injury to the right leg. He stated that the accident of May, 1952, in which claimant "stubbed the toes of the left foot", probably led to the condition of impending gangrene in those toes which required his hospitalization in June, 1952. Dr. O'Keeffe testified at the same hearing with reference to the relationship of the puncture-wound accident to the loss of the left leg. He reasoned that the long period of bed rest imposed in the attempt to heal the ulcer on his right leg slowed down the blood supply to his legs causing clotting and thrombosis of the veins and arteries. Dr. O'Keeffe first saw him in July, 1952, after the alleged consequential accident. He observed impending gangrene and vasospasm in both legs which were turning blue. He testified: "I think that the condition in the left leg is directly the result of long bed rest produced by the ulcer in the right leg. I think that the condition of the toes, the trauma of the toes may possibly be considered as a contributory factor; that I do not know." Dr. Weeden, a medical director of the board, testified if there was no injury to the toes of the left leg from the alleged consequential accident there would not, in his opinion, be any causal relation between the original accident and the amputation of the left leg. He, however, thought there must have been an injury to the toes because the discoloration symptom appeared so soon after the accident. The claimant's testimony is somewhat confusing as to the occurrence and sequelae of the consequential accident of May 20, 1952 but the board has found, in our view on substantial evidence, that it was a consequence of the original accident. On the issue of causal relationship, the medical testimony was in dispute but in our opinion a question of fact was presented and there was substantial evidence to sustain the decision and award made by the board. Upon the record we may not say as a matter of law that the board could not so determine these questions of fact. Decision and award affirmed, with costs to the Workmen's Compensation Board. Foster, P. J., Gibson, Herlihy and Reynolds, JJ., concur.